TRAVELERS INSURANCE COMPANY *v.*
MICHELLE PONDI-SALIK
(SC 16765)

Sullivan, C. J., and Borden, Norcott, Katz and Vertefeuille, Js.

*(One justice concurring separately)*

Argued December 9, 2002—officially released March 25, 2003

*Paul E. Pollock*, for the appellant (plaintiff).

*William F. Gallagher*, with whom were *Harold L. Rosnick* and, on the brief, *Hugh D. Hughes*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Travelers Insurance Company, appeals from the judgment of the trial court denying its application to vacate an arbitration award in favor of the defendant, Michelle Pondi-Salik. The defendant, a former state trooper who had been injured while on duty, filed an uninsured motorist claim with the plaintiff, which had issued an automobile insurance policy to the defendant's employer, the state of Connecticut. The sole issue in this appeal is whether the trial court properly concluded that benefits paid or payable to the defendant, pursuant to General Statutes § 5-192p,[1] were not disability benefits but, rather, consti-

---

[1] General Statutes § 5-192p (a) provides: "If a member of tier II, while in state service, becomes disabled as defined in subsection (b) of this section, prior to age sixty-five, he is eligible for disability retirement if the member has completed at least ten years of vested service. If a member of tier II, while in state service, becomes so disabled as a result of any injury received while in the performance of his duty as a state employee, he is eligible for disability retirement, regardless of his period of state service or his age."

tuted retirement benefits, which were not deductible from the defendant's award of uninsured motorist benefits pursuant to the terms of the insurance policy at issue. We conclude that the benefits granted under § 5-192p are retirement benefits that should not be deducted from the award, and, accordingly, affirm the judgment of the trial court.[2]

The trial court's memorandum of decision sets forth the following relevant facts and procedural history. "On December 1, 1988, Aetna Casualty [and] Surety Company issued an automobile insurance policy to the state of Connecticut (policy). The plaintiff . . . is the successor corporation to Aetna Casualty [and] Surety Company. The policy included a section for uninsured motorist coverage which provided that amounts paid thereunder are subject to a one million dollar limit and shall be reduced by amounts paid under workers' compensation, disability benefits or similar law . . . .

"On August 30, 1989, while operating a vehicle insured under the policy and acting in the performance of her duties as a Connecticut state trooper, the defendant . . . was injured in an automobile accident. As a result of the injuries she sustained in the accident, the defendant recovered workers' compensation benefits and disability retirement benefits under . . . § 5-192p. It is undisputed that the defendant became disabled as a result of the injuries she incurred in the accident, that she was performing her duties as a state employee at the time of the accident and that she was what the state of Connecticut refers to as a tier II employee.[3]

---

[2] The defendant raised two alternate grounds for affirmance on appeal. We do not address these issues because we affirm the judgment of the trial court on the principal issue on appeal.

[3] In Connecticut, employees are either tier I or tier II employees, depending on their date of hire. Regarding disability benefits, tier I employees must contribute to receive their benefits while tier II employees have a noncontributory plan.

"In accordance with General Statutes § 38a-336 and the terms of the policy, the defendant filed an uninsured motorist claim with the plaintiff. Pursuant to . . . § 38a-336 (c)[4] and the policy,[5] the claim was submitted to arbitration and was heard by a panel of three arbitrators. On October 30, 2000, the majority of the arbitrators found in favor of the defendant and awarded her $827,025.62. Specifically, the arbitrators stated: 'We find the issues in favor of the [defendant], and find that [she] is entitled to gross damages of $2,224,540 comprised of $1,474,540 for economic damages and $750,000 in non-economic damages. We further find that the [defendant] was contributorily negligent in the amount of 10 [percent] and therefore reduce the gross award to $2,002,086. We find that the total uninsured motorist coverage is $1,000,000 and that amount should be reduced by $172,974.38 representing workers' compensation benefits received. We therefore find in favor of

[4] At the time of the defendant's injury in 1989, the relevant statute was codified at General Statutes § 38-175c. In 1990, that section was amended by, inter alia, the addition of minor technical changes and the restructuring of the statute to include alphabetical, rather than numerical, subsections. See Public Acts 1990, No. 90-243, § 127. In 1991, § 38-175c was transferred to its current codification at General Statutes § 38a-336. Because the arbitration language of § 38a-336 (c) existed in the former § 38-175c and has remained unchanged since 1990, and because the trial court referred to § 38a-336 (c) in its memorandum of decision, for purposes of clarity, we also refer herein to the current codification of the statute.

General Statutes § 38a-336 (c) provides in relevant part: "Each automobile liability insurance policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a . . . panel of three arbitrators if the amount in demand is more than forty thousand dollars."

[5] The policy issued by the plaintiff provides in relevant part: "If we and an 'insured' disagree whether the 'insured' is legally entitled to recover damages from the owner or driver of an 'uninsured motor vehicle' or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third . . . . A decision agreed to by two of the arbitrators will be binding."

the [defendant] and award her the sum of $827,025.62, which is the balance of the uninsured motorist coverage.' . . . On the issue of the benefits the defendant is eligible to receive under . . . § 5-192p, the arbitrators found that such benefits are retirement benefits, as opposed to disability benefits, and thus should not be deducted from the amount awarded to the [defendant]." The trial court also noted that one of the arbitrators issued a dissenting opinion in which he concluded that the benefits awarded under § 5-192p were disability retirement benefits that should have been deducted from the amount due to the defendant pursuant to the policy.

"On November 16, 2000, the plaintiff filed an application to vacate the arbitration award and contend[ed] that the arbitrators erred in not deducting the benefits the defendant received under § 5-192p from the uninsured motorist benefits they awarded to her."[6] The trial court affirmed the arbitrators' award, concluding that the benefits provided by § 5-192p are retirement benefits, not disability benefits, and, therefore, not deductible from the award pursuant to the terms of the policy. The plaintiff appealed from the trial court's judgment to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We affirm the judgment of the trial court.

On appeal, the plaintiff claims that the trial court improperly refused to vacate the arbitration award on

---

[6] In its application to vacate, the plaintiff raised two separate grounds for vacating the arbitration award in two separate counts. The first alleged that the arbitrators improperly had failed to deduct benefits payable under § 5-192p from the defendant's award of uninsured motorist benefits. The plaintiff's second claim alleged that the award should be vacated because the defendant's claim was barred by the "firefighter's rule." The trial court, in its memorandum of decision, addressed only the first claim. The second claim is not at issue in this appeal.

the ground that the award should have been reduced by the benefits the defendant had received pursuant to § 5-192p.[7] The defendant responds that benefits provided under § 5-192p are retirement benefits, not disability benefits, and are not deductible from the uninsured motorist award under the policy. We agree with the defendant.

We begin by setting forth the standard of review that will govern our analysis of this issue. The standard of review for arbitration awards is determined by whether the arbitration was compulsory or voluntary.[8] This court recognized the fundamental differences between voluntary and compulsory arbitration in *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 190–91, 530 A.2d 171 (1987). The court concluded therein that "where judicial review of compulsory arbitration proceedings required by [§ 38a-336 (c)] is undertaken . . . the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators. The court is not bound by the limitations contractually placed on the extent of its review as in voluntary arbitration proceedings." Id., 191. A reviewing court therefore must conduct a de novo review of the arbitrators' decision on coverage issues because such issues are subject to compulsory arbitration. *Quigley-Dodd* v.

[7] Effective November 1, 2000, subsequent to the date of the defendant's injuries, General Statutes (Rev. to 1999) § 38a-336 (b) and § 38a-334-6 (d) of the Regulations of Connecticut State Agencies were amended so as to preclude an insurer from reducing the limits of liability for damages by amounts paid or payable to an insured under any disability benefits law. See, e.g., Public Acts 2000, No. 00-143. As the trial court in the present case noted, "[p]ursuant to these amendments, it is arguable that an insurer is no longer entitled to reduce the limits of its liability for uninsured motorist benefits by the amount of disability benefits an insured is eligible to receive." We do not address the amended statute and regulation, however, because the parties have agreed that the statutes that were in effect at the time of the injury are applicable to the present case. See footnote 4 of this opinion.

[8] Both parties in the present case agree that the arbitration was compulsory.

*General Accident Ins. Co. of America,* 256 Conn. 225, 234, 772 A.2d 577 (2001).

The threshold question of whether the benefits allowed pursuant to § 5-192p are retirement benefits or disability benefits presents a question of statutory interpretation. "[W]e now restate the process by which we interpret statutes as follows: The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that,

when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003).

The policy at issue in the present case provides that "[a]ny amount payable under this [uninsured motorist] coverage shall be reduced by . . . [a]ll sums paid or payable under any workers' compensation, disability benefits or similar law . . . ." Because the inclusion of such a provision in the policy was authorized by § 38a-334-6 of the Regulations of Connecticut State Agencies, its propriety is not in dispute. We must decide whether the benefits provided to the defendant under § 5-192p are disability benefits or benefits received pursuant to a law similar to our workers' compensation or disability benefit statutes.

General Statutes § 5-192p (a) provides: "If a member of tier II, while in state service, becomes disabled as defined in subsection (b) of this section, prior to age sixty-five, he is eligible for disability retirement if the member has completed at least ten years of vested service. If a member of tier II, while in state service, becomes so disabled as a result of any injury *received while in the performance of his duty as a state employee*, he is eligible for disability retirement, regardless of his period of state service or his age." (Emphasis added.) The defendant received benefits pursuant to § 5-192p because she was disabled as a result of injuries she sustained while on duty as a state trooper. The remaining provisions of the statute refer to the benefits provided therein in a variety of ways, such as "disability

retirement," "retirement income," "disability benefit," "disability income" and "disability compensation." General Statutes § 5-192p (b) through (i). The terminology used in the statute, therefore, is not helpful to our task of determining whether the benefits are retirement benefits or disability benefits. The context of § 5-192p, however, and some of its provisions are instructive as to the nature of the benefits provided therein.

In order to assure that our construction of a statute is logical and develops one consistent and harmonious body of law, we must consider not only the provision itself, but also the overall statutory scheme. *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 42, 792 A.2d 835 (2002); *Doe* v. *Doe*, 244 Conn. 403, 428–29, 710 A.2d 1297 (1998). Section 5-192p is found in chapter 66 of our General Statutes, which is known as the State Employees Retirement Act. General Statutes § 5-152. Additionally, the statutes surrounding § 5-192p provide for various types of *retirement* benefits: General Statutes § 5-192n provides for hazardous duty *retirement*; General Statutes § 5-192o provides for deferred vested *retirement*; General Statutes § 5-192q provides for optional forms of *retirement* income; and General Statutes § 5-192r provides for a spouse's allowance and *preretirement* death benefits.

Two of the specific provisions of § 5-192p also strongly suggest that the benefits provided therein are retirement benefits. First, in order to qualify for the benefits, the recipient's disability must have occurred after ten years of service or as a result of injuries incurred while on duty. General Statutes § 5-192p (a). Second, the amount of the benefits to be received is calculated based on "credited service," meaning the number of years that the recipient has worked or would

have worked at the job. General Statutes § 5-192p (c).[9] We conclude, on the basis of the context of § 5-192p and the statute's reliance on credited service to determine both qualification for and calculation of benefits, that benefits paid pursuant to § 5-192p are in the nature of retirement benefits and not disability benefits. Disability operates only to accelerate the employee's qualification for retirement benefits under § 5-192p.

Our conclusion is bolstered by reference to the underlying bill that subsequently was enacted as § 5-192p. "The title of legislation when it is acted upon by the legislature is significant and often a valuable aid to construction . . . ." (Internal quotation marks omitted.) *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 405, 528 A.2d 805 (1987). The title of the bill was "An Act Amending the State Employees Retirement System and Establishing a Tier II Pension Plan for New State Personnel."[10] Substitute Senate Bill No. 987; see Public Acts 1983, No. 83-533, § 32. Moreover, § 5-192p has since been amended twice and the titles of the amending bills further reflect that the legislature considered this statute part of a retirement scheme. See Substitute House Bill No. 5909, enacted by Public Acts 1984, No. 84-411 ("An Act Clarifying and Correcting Provisions of the State Employees Retirement System"); Substitute House Bill No. 7564, enacted as Public Acts 1985, No. 85-510 ("An Act Amending the State Employees Retirement System").

[9] General Statutes § 5-192p (c) provides: "The member who is eligible for disability retirement shall receive a monthly retirement income of one-twelfth of one and one-third per cent of final average earnings, plus one-half of one per cent of final average earnings in excess of the year's breakpoint, the sum multiplied by the greater of the credited service he would have at age sixty-five if he continued to work until that age, but limited to a maximum of thirty years, or his credited service earned to date of disability retirement."

[10] The legislative debate surrounding the enactment of § 5-192p did not directly address the classification of the benefits as either retirement or disability benefits.

We find further support for our conclusion in the existence of a separate and parallel statutory provision that establishes disability benefits for the state police. See General Statutes § 5-142.[11] In enacting § 5-192p, the legislature is presumed to have acted with knowledge of existing statutes and with an intent to create one consistent body of law. *Zachs* v. *Groppo*, 207 Conn. 683, 696, 542 A.2d 1145 (1988); *Doe* v. *Institute of Living, Inc.*, 175 Conn. 49, 62, 392 A.2d 491 (1978). We must assume that the legislature enacted § 5-192p with knowledge of the existence of § 5-142, which provides disability compensation for certain state employees, including the state police, who are injured during the performance of their duty. Additionally, § 5-142 is located in chapter 65 of the General Statutes, which is entitled "Disability Compensation and Death Benefits." Viewing the statutory scheme as a whole, we see that chapter 65 of our General Statutes is designated for disability benefits while chapter 66, where § 5-192p is located, is designated for retirement benefits.

In support of its claim that the benefits received by the defendant should be deducted from her uninsured motorist benefits, the plaintiff relies on *Vitti* v. *Allstate*

---

[11] General Statutes § 5-142 (a) provides in relevant part: "If any member of the Division of State Police within the Department of Public Safety . . . sustains any injury (1) while making an arrest or in the actual performance of such police duties or guard duties . . . the state shall pay all necessary medical and hospital expenses resulting from such injury. If total incapacity results from such injury, such person shall be removed from the active payroll the first day of incapacity . . . and placed on an inactive payroll. Such person shall continue to receive the full salary that such person was receiving at the time of injury . . . for a period of two hundred sixty weeks from the date of the beginning of such incapacity. Thereafter, such person shall be removed from the payroll and shall receive compensation at the rate of fifty per cent of the salary that such person was receiving at the expiration of said two hundred sixty weeks so long as such person remains so disabled, except that any such person who is a member of the Division of State Police . . . shall receive compensation at the rate of sixty-five per cent of such salary so long as such person remains so disabled. . . ."

*Ins. Co.*, 245 Conn. 169, 713 A.2d 1269 (1998), in which we concluded that social security disability benefits constituted benefits that are a limitation on insurance coverage. The plaintiff claims that § 38a-334-6 (d) of the Regulations of Connecticut State Agencies includes as offsets benefits under "all laws providing disability benefits." The plaintiff asserts that the benefits at issue in this case are disability benefits based on the definition of disability employed in *Vitti*: "the inability to pursue an occupation or perform services for wages because of physical or mental impairment . . . ." (Internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, supra, 178. We disagree. Our more thorough analysis herein of § 5-192p leads us to conclude that the benefits provided thereunder are retirement benefits, the receipt of which is accelerated by disability.

We conclude that the trial court properly determined that the benefits paid to the defendant pursuant to § 5-192p are not deductible from her uninsured motorist award pursuant to the provisions of the policy issued by the plaintiff.

The judgment is affirmed.

In this opinion BORDEN, NORCOTT and KATZ, Js., concurred.

SULLIVAN, C. J., concurring. I agree with the majority's conclusion in this matter except on the issue of statutory interpretation. My position on this issue continues to be the same as set forth in my concurrence in *Mandell* v. *Gavin*, 262 Conn. 659, 672, 816 A.2d 619 (2003), and in the dissenting opinion by Justice Zarella, in which I joined, in *State* v. *Courchesne*, 262 Conn. 537, 597, 816 A.2d 562 (2003).