# STATE OF CONNECTICUT *v.* JUAN L.*
## (SC 18295)

Rogers, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

Argued March 19—officially released May 19, 2009

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Cara Eschuk*, former supervisory assistant state's attorney, and *Margaret Gaffney Radionovas*, senior assistant state's attorney, for the appellant (state).

*Jennifer C. Leavitt*, deputy assistant public defender, with whom was *Christine Perra Rapillo*, executive assistant public defender, for the appellee (respondent).

*Opinion*

NORCOTT, J. The sole issue in this appeal is whether General Statutes § 54-56d (m),[1] which governs the com-

---

[1] General Statutes § 54-56d (m) provides: "If at any time the court determines that there is not a substantial probability that the defendant will attain competency within the period of treatment allowed by this section, or if at the end of such period the court finds that the defendant is still not competent, the court shall consider any recommendation made by the examiners pursuant to subsection (d) of this section and any opinion submitted by the treatment facility pursuant to subparagraph (C) of subsection (j) of this section regarding eligibility for, and the appropriateness of, civil commitment to a hospital for psychiatric disabilities and shall either release the defendant from custody or order the defendant placed in the custody of the Commissioner of Mental Health and Addiction Services, the Commissioner of Children and Families or the Commissioner of Developmental Services. If the court orders the defendant placed in the custody of the Commissioner of Children and Families or the Commissioner of Developmental Services, the commissioner given custody, or the commissioner's designee, shall then apply for civil commitment in accordance with sections 17a-75 to 17a-83, inclusive, or 17a-270 to 17a-282, inclusive. If the court orders the defendant placed in the custody of the Commissioner of Mental Health and Addiction Services, the court may order the commissioner, or the commissioner's designee, to apply for civil commitment in accordance with sections 17a-495 to 17a-528, inclusive, or order the commissioner, or the commissioner's designee, to provide services to the defendant in a less restrictive setting,

mitment or release of criminal defendants who are not

provided the examiners have determined in the written report filed pursuant to subsection (d) of this section or have testified pursuant to subsection (e) of this section that such services are available and appropriate. The court shall hear arguments as to whether the defendant should be released or should be placed in the custody of the Commissioner of Mental Health and Addiction Services, the Commissioner of Children and Families or the Commissioner of Developmental Services. If the court orders the release of a defendant charged with the commission of a crime that resulted in the death or serious physical injury, as defined in section 53a-3, of another person, or orders the placement of such defendant in the custody of the Commissioner of Mental Health and Addiction Services, the court may, on its own motion or on motion of the prosecuting authority, order, as a condition of such release or placement, periodic examinations of the defendant as to the defendant's competency. Such an examination shall be conducted in accordance with subsection (d) of this section. Upon receipt of the written report as provided in subsection (d) of this section, the court shall, upon the request of either party filed not later than thirty days after the court receives such report, conduct a hearing as provided in subsection (e) of this section. Such hearing shall be held not later than ninety days after the court receives such report. If the court finds that the defendant has attained competency, the defendant shall be returned to the custody of the Commissioner of Correction or released, if the defendant has met the conditions for release, and the court shall continue with the criminal proceedings. Periodic examinations ordered by the court under this subsection shall continue until the court finds that the defendant has attained competency or until the time within which the defendant may be prosecuted for the crime with which the defendant is charged, as provided in section 54-193 or 54-193a, has expired, whichever occurs first. The court shall dismiss, with or without prejudice, any charges for which a nolle prosequi is not entered when the time within which the defendant may be prosecuted for the crime with which the defendant is charged, as provided in section 54-193 or 54-193a, has expired. Notwithstanding the erasure provisions of section 54-142a, police and court records and records of any state's attorney pertaining to a charge which is nolled or dismissed without prejudice while the defendant is not competent shall not be erased until the time for the prosecution of the defendant expires under section 54-193 or 54-193a. A defendant who is not civilly committed as a result of an application made by the Commissioner of Mental Health and Addiction Services, the Commissioner of Children and Families or the Commissioner of Developmental Services pursuant to this section shall be released. A defendant who is civilly committed pursuant to such an application shall be treated in the same manner as any other civilly committed person."

Section 54-56d was amended by Nos. 07-73 and 07-153 of the 2007 Public Acts, which made several technical changes to the statute that are not relevant to this appeal. For purposes of convenience, references to the § 54-

competent to stand trial, applies in the Superior Court for Juvenile Matters. The state appeals[2] from the judgment of the trial court dismissing juvenile delinquency proceedings brought against the respondent, Juan L., on the ground that he was not competent to stand trial, and that § 54-56d (m) did not apply in this case. Because we conclude that § 54-56d (m) applies to juvenile matters delinquency proceedings, we reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The respondent was born on May 3, 1992. The state charged him with sexual assault in the third degree in violation of General Statutes § 53a-72a, risk of injury to a child in violation of General Statutes § 53-21, and unlawful restraint in the first degree in violation of General Statutes § 53a-95, in connection with an incident that had occurred on or about April 15, 2007, in which he allegedly had engaged in sexual contact with an eight year old male child. The respondent moved pursuant to § 54-56d (c)[3] for a determination of his competency to stand trial. Noting that the court had found the respondent not competent to stand trial on similar charges that had been filed two years earlier,[4] the trial court granted his motion and

56d in this opinion are to the current revision of the statute.

[2] After the trial court granted the state leave to appeal pursuant to General Statutes § 54-96, the state appealed from the judgment of the trial court to the Appellate Court. Thereafter, we granted the state's motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[3] General Statutes § 54-56d (c) provides: "If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency."

[4] The state previously had charged the respondent with sexual assault in the fourth degree in violation of General Statutes (Rev. to 2005) § 53a-73a and risk of injury to a child in violation of General Statutes (Rev. to 2005) § 53-21 based on allegations that he had engaged in sexual conduct with a seven year old male child in 2005. Following an evaluation, the trial court found him not competent to stand trial, and not restorable at that time. The state entered a nolle prosequi for this first set of charges after arrangements

ordered further evaluation to determine whether there had been any changes to his mental status. See General Statutes § 54-56d (d).[5] Following an evaluation by Sarah Xavier, a psychiatrist, the trial court held a hearing pursuant to § 54-56d (e),[6] and found that the respondent

---

were made for the department of children and families to provide voluntary services to the respondent and his family.

[5] General Statutes § 54-56d (d) provides in relevant part: "If the court finds that the request for an examination is justified and that, in accordance with procedures established by the judges of the Superior Court, there is probable cause to believe that the defendant has committed the crime for which the defendant is charged, the court shall order an examination of the defendant as to his or her competency. The court may (1) appoint one or more physicians specializing in psychiatry to examine the defendant . . . . If the examiners determine that the defendant is not competent, the examiners shall then determine whether there is a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the maximum period of any placement order under this section. If the examiners determine that there is a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the maximum period of any placement order under this section, the examiners shall then determine whether the defendant appears to be eligible for civil commitment, with monitoring by the Court Support Services Division, pursuant to subdivision (2) of subsection (h) of this section. . . . The court may authorize a physician specializing in psychiatry, a clinical psychologist, a clinical social worker licensed pursuant to chapter 383b or a psychiatric nurse clinical specialist holding a master's degree in nursing selected by the defendant to observe the examination. Counsel for the defendant may observe the examination. The examination shall be completed within fifteen days from the date it was ordered and the examiners shall prepare and sign, without notarization, a written report and file such report with the court within twenty-one business days of the date of the order. On receipt of the written report, the clerk of the court shall cause copies to be delivered immediately to the state's attorney and to counsel for the defendant."

[6] General Statutes § 54-56d (e) provides: "The court shall hold a hearing as to the competency of the defendant no later than ten days after the court receives the written report. Any evidence regarding the defendant's competency, including the written report, may be introduced at the hearing by either the defendant or the state. If the written report is introduced, at least one of the examiners shall be present to testify as to the determinations in the report, unless the examiner's presence is waived by the defendant and the state. Any member of the clinical team shall be considered competent to testify as to the team's determinations. A defendant and the defendant's counsel may waive the court hearing only if the examiners, in the written report, determine without qualification that the defendant is competent."

had proven by a preponderance of the evidence; see General Statutes § 54-56d (b);[7] that he was not competent to stand trial, and that there was "no substantial probability that [the respondent] will regain competence [within the] maximum period allowed by the law." See General Statutes § 54-56d (f) and (g).[8] The court then continued the matter for ninety days so that the department of children and families and the department of mental retardation[9] could create a final plan for supervising and treating the respondent, who remained on release, but under continuous supervision.

Thereafter, the trial court raised the question of whether it had authority under § 54-56d (m) to transfer the respondent to the custody of the department of mental retardation or the department of children and families. After hearing argument, the court concluded that § 54-56d (m) did not apply to delinquency proceedings because it does not contain the word "juvenile," and references to the department of children and families therein pertained to persons whose cases are han-

---

[7] General Statutes § 54-56d (b) provides: "A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry."

[8] General Statutes § 54-56d provides in relevant part: "(f) Court finding of competency or incompetency. If the court, after the hearing, finds that the defendant is competent, the court shall continue with the criminal proceedings. If the court finds that the defendant is not competent, the court shall also find whether there is a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the maximum period of any placement order permitted under this section.

"(g) Court procedure if finding that defendant will not regain competency. If, at the hearing, the court finds that there is not a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the period of any placement order under this section, the court shall follow the procedure set forth in subsection (m) of this section. . . ."

[9] The department of mental retardation is now known as the department of developmental services. See Public Acts 2007, No. 07-73.

dled by the adult criminal courts, but nevertheless remain under that department's statutory jurisdiction. The trial court noted that the only provision relating specifically to competency determinations in juvenile matters proceedings is Practice Book (2007) § 31a-14,[10] which does not set forth a procedure for resolving the case of a juvenile who has been found to be incompetent and nonrestorable. The trial court then concluded that, "since [the respondent] is incompetent, not restorable, and the likelihood that even with services, of that ever changing, it would not be in his best interest to proceed with a delinquency matter at this time." Accordingly, the trial court dismissed the delinquency proceedings. This appeal followed. See footnote 2 of this opinion.

On appeal, the state claims that the trial court improperly concluded that § 54-56d (m) does not apply to juvenile delinquency proceedings, and therefore, it did not have the authority under that statute to transfer the respondent to the custody of the department of children and families or the department of mental retardation. Specifically, the state argues that the word "defendant"

_____

[10] Practice Book (2007) § 31a-14 provides: "(a) No physical and/or mental examination or examinations by any physician, psychologist, psychiatrist or social worker shall be ordered by the judicial authority of any child denying delinquent behavior or status as a child from family with service needs or youth in crisis prior to the adjudication, except (1) with the agreement of the child's parent or guardian and attorney, (2) when the child has executed a written statement of responsibility, (3) when the judicial authority finds that there is a question of the child's competence to understand the nature of the proceedings or to participate in the defense, or a question of the child having been mentally capable of unlawful intent at the time of the commission of the alleged act, or (4) where the child has been detained and as an incident of detention is administered a physical examination to establish the existence of any contagious or infectious condition.

"(b) Upon a showing that the mental health of a child is at issue, either prior to adjudication for the reasons set forth in subsection (a) herein or subsequent thereto as a determinate of disposition, the judicial authority may order a child's detention for a period not to exceed thirty days in a hospital or other institution empowered by law to treat mentally ill children for study and a report on the child's mental condition."

in § 54-56d (m) includes respondents in juvenile delinquency proceedings because it is a "broad, generic term that does not denote only adult criminal defendants," and the commitment statutes cross-referenced by § 54-56d (m), particularly with respect to the department of children and families, are applicable only to juveniles. Finally, the state notes the relevant legislative history and long-standing juvenile matters practice, and contends that, because juveniles have the same constitutional rights as adults with respect to competency to stand trial in delinquency proceedings, which are quasi-criminal in nature,[11] construing § 54-56d (m) to apply only in adult criminal court would leave courts without a procedure to aid, and to prevent from reoffending, juveniles who are incompetent to stand trial.

In response, the respondent claims that the trial court properly dismissed the case because § 54-56d (m) clearly and unambiguously does not apply to juvenile delinquency proceedings. The respondent argues specifically that § 54-56d is a rule of criminal procedure

---

[11] The parties do not dispute that, under the due process clause of the fourteenth amendment to the United States constitution, a juvenile may not be subjected to delinquency proceedings while incompetent, and therefore, has a right to have his or her competency determined prior to such proceedings. See, e.g., *In the Matter of W.A.F.*, 573 A.2d 1264, 1267–68 (D.C. 1990); *In the Matter of K.G.*, 808 N.E.2d 631, 635 (Ind. 2004); *In the Matter of Two Minor Children*, 95 Nev. 225, 230–31, 592 P.2d 166 (1979); accord *In re Steven M.*, 264 Conn. 747, 764, 826 A.2d 156 (2003) ("if there is evidence that a juvenile who is subject to transfer proceedings is incompetent, the trial court must hold a competency hearing to determine whether the juvenile is capable of assisting his attorney in representing his interests at the transfer hearing"). Thus, a respondent in juvenile delinquency proceedings must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and "a rational as well as factual understanding of the proceedings against him." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 450, 936 A.2d 611 (2007), citing *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam); see also General Statutes § 54-56d (a) ("a defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense").

that is not included within the separate statutory scheme that governs the more flexible juvenile matters courts. The respondent emphasizes that, under General Statutes § 46b-120 (6),[12] juvenile delinquency proceedings are fundamentally different from criminal proceedings because they encompass violations of municipal or local ordinances, in addition to federal and state laws, and do not include the offense classifications and mandatory minimum sentences that are applicable in criminal proceedings. The respondent further argues that the references to the department of children and families in § 54-56d (m) do not mean that the statute must apply to juvenile delinquency respondents, but rather, refer to incompetent, nonrestorable defendants in adult criminal proceedings who remain under that department's jurisdiction under General Statutes § 17a-3 (a),[13] namely, " '[y]outh[s]' "; General Statutes § 17a-

[12] General Statutes § 46b-120 (6) provides in relevant part: "[A] child may be convicted as 'delinquent' who has violated (A) any federal or state law or municipal or local ordinance, other than an ordinance regulating behavior of a child in a family with service needs, (B) any order of the Superior Court, except as provided in section 46b-148, or (C) conditions of probation as ordered by the court . . . ." See also General Statutes § 46b-120 (1) (" '[c]hild' means any person under sixteen years of age and, for purposes of delinquency matters, 'child' means any person [A] under sixteen years of age, or [B] sixteen years of age or older who, prior to attaining sixteen years of age, has violated any federal or state law or municipal or local ordinance"). We note that § 46b-120 was amended by No. 07-4 of the 2007 Public Acts to take effect on January 1, 2010. References in this opinion to § 46b-120 are to the current revision of the statute.

[13] General Statutes § 17a-3 provides in relevant part: "(a) The department shall plan, create, develop, operate or arrange for, administer and evaluate a comprehensive and integrated state-wide program of services, including preventive services, *for children and youths whose behavior does not conform to the law or to acceptable community standards, or who are mentally ill,* including deaf and hearing impaired children and youths who are mentally ill, emotionally disturbed, substance abusers, delinquent, abused, neglected or uncared for, including all children and youths who are or may be committed to it by any court, and all children and youths voluntarily admitted to, or remaining voluntarily under the supervision of, the commissioner for services of any kind. Services shall not be denied to any such child or youth solely because of other complicating or multiple disabilities. . . . In furtherance of this purpose, the department shall: (1) Maintain the Connecti-

1 (6);[14] or juveniles whose cases are transferred to the adult criminal docket for prosecution under General Statutes § 46b-127.[15] Finally, the respondent contends that, even if § 54-56d is held inapplicable to juvenile matters proceedings, the court still has remedies to address an incompetent, nonrestorable child, namely: (1) referral to the appropriate Probate Court under General Statutes § 17a-76 et seq. to determine whether he should be committed civilly as a danger to himself or others; or (2) an order issued, pursuant to General Statutes § 46b-121,[16] to the department of children and fami-

cut Juvenile Training School and other appropriate facilities exclusively for delinquents; (2) develop a comprehensive program for prevention of problems of children and youths and provide a flexible, innovative and effective program for the placement, care and treatment of children and youths committed by any court to the department, transferred to the department by other departments, or voluntarily admitted to the department . . . ." (Emphasis added.)

[14] General Statutes § 17a-1 (6) provides in relevant part: " 'Youth' means any person at least sixteen years of age and under nineteen years of age . . . ."

[15] General Statutes § 46b-127 provides in relevant part: "(a) The court shall automatically transfer from the docket for juvenile matters to the regular criminal docket of the Superior Court the case of any child charged with the commission of a capital felony, a class A or B felony or a violation of section 53a-54d, provided such offense was committed after such child attained the age of fourteen years and counsel has been appointed for such child if such child is indigent. . . . A state's attorney may, not later than ten working days after such arraignment, file a motion to transfer the case of any child charged with the commission of a class B felony or a violation of subdivision (2) of subsection (a) of section 53a-70 to the docket for juvenile matters for proceedings in accordance with the provisions of this chapter. . . .

"(b) Upon motion of a juvenile prosecutor and order of the court, the case of any child charged with the commission of a class C or D felony or an unclassified felony shall be transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court, provided such offense was committed after such child attained the age of fourteen years and the court finds ex parte that there is probable cause to believe the child has committed the act for which he is charged. . . ."

[16] General Statutes § 46b-121 provides in relevant part: "(a) . . . Juvenile matters in the criminal session include all proceedings concerning delinquent children in the state and persons sixteen years of age and older who are under the supervision of a juvenile probation officer while on probation or

lies to investigate whether the respondent is a child who is abused, neglected or has unmet special needs. We agree with the state, and conclude that § 54-56d (m) applies in delinquency proceedings in the Superior Court for Juvenile Matters.

"The issue in this case . . . raises a question of statutory construction, which is a [question] of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning,

a suspended commitment to the Department of Children and Families, for purposes of enforcing any court orders entered as part of such probation or suspended commitment.

"(b) In juvenile matters, the Superior Court shall have authority to make and enforce such orders directed to parents, including any person who acknowledges before said court paternity of a child born out of wedlock, guardians, custodians or other adult persons owing some legal duty to a child, youth or youth in crisis therein, as it deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child, youth or youth in crisis subject to its jurisdiction or otherwise committed to or in the custody of the Commissioner of Children and Families. In addition, with respect to proceedings concerning delinquent children, the Superior Court shall have authority to make and enforce such orders as it deems necessary or appropriate to punish the child, deter the child from the commission of further delinquent acts, assure that the safety of any other person will not be endangered and provide restitution to any victim. Said court shall also have authority to grant and enforce injunctive relief, temporary or permanent in all proceedings concerning juvenile matters. . . ."

We note that § 46b-121 was amended by No. 07-4 of the 2007 Public Acts to take effect on January 1, 2010. References in this opinion to § 46b-121 are to the current revision of the statute.

General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Marsh & McLennan Cos.*, 286 Conn. 454, 464–65, 944 A.2d 315 (2008).

We begin with the language of § 54-56d (m), the subsection directly at issue in this appeal. Section 54-56d (m) provides in relevant part: "If at any time the court determines that there is not a substantial probability that the defendant will attain competency within the period of treatment allowed by this section, or if at the end of such period the court finds that the defendant is still not competent, the court shall consider any recommendation made by the examiners pursuant to subsection (d) of this section and any opinion submitted by the treatment facility pursuant to subparagraph (C) of subsection (j) of this section regarding eligibility for, and the appropriateness of, civil commitment to a hospital for psychiatric disabilities and shall either release the defendant from custody or order the defendant placed in the custody of the Commissioner of Mental Health and Addiction Services, the Commissioner of Children and Families or the Commissioner of Developmental Services. If the court orders the defendant placed in the custody of the Commissioner of Children and Families or the Commissioner of Developmental Services, the commissioner given custody, or the commissioner's designee, shall then apply for civil commitment in accordance with sections 17a-75 to 17a-83, inclusive, or 17a-270 to 17a-282, inclusive. . . . The

court shall hear arguments as to whether the defendant should be released or should be placed in the custody of the Commissioner of Mental Health and Addiction Services, the Commissioner of Children and Families or the Commissioner of Developmental Services. If the court orders the release of a defendant charged with the commission of a crime that resulted in the death or serious physical injury, as defined in section 53a-3, of another person, or orders the placement of such defendant in the custody of the Commissioner of Mental Health and Addiction Services, the court may, on its own motion or on motion of the prosecuting authority, order, as a condition of such release or placement, periodic examinations of the defendant as to the defendant's competency. . . . A defendant who is not civilly committed as a result of an application made by the Commissioner of Mental Health and Addiction Services, the Commissioner of Children and Families or the Commissioner of Developmental Services pursuant to this section shall be released. A defendant who is civilly committed pursuant to such an application shall be treated in the same manner as any other civilly committed person."

The question in this appeal is whether a respondent in a juvenile delinquency proceeding is a "defendant" who is subject to § 54-56d (m). The term "defendant" is not defined by the juvenile matters statutes contained in chapter 815t of the General Statutes, or by the criminal procedure statutes contained in chapters 959 and 960 of the General Statutes, or within the specific confines of § 54-56d. Thus, "[u]nder the rules of statutory construction . . . words and phrases shall be construed according to the commonly approved usage of the language . . . . If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Citation omitted; internal quotation

marks omitted.) *Southern New England Telephone Co.* v. *Cashman,* 283 Conn. 644, 656, 931 A.2d 142 (2007). The dictionary defines "defendant" as "a person required to make answer in a legal action or suit . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 2001); see also Black's Law Dictionary (8th Ed. 2004) (defining "defendant" as "[a] person sued in a civil proceeding or accused in a criminal proceeding"). Although a respondent in a juvenile delinquency proceeding clearly is "a person required to make answer in a legal action"; Merriam-Webster's Collegiate Dictionary (10th Ed. 2001); the "test to determine ambiguity is whether the statute, *when read in context,* is susceptible to more than one reasonable interpretation." (Emphasis added; internal quotation marks omitted.) *State* v. *Marsh & McLennan Cos.,* supra, 286 Conn. 464–65. Thus, we note that the remainder of the language of § 54-56d (m) supports the state's reading of the statute, particularly the court's authority to order the defendant placed in the custody of the department of children and families, with a directive to the "commissioner . . . or the commissioner's designee . . . [then to] apply for civil commitment in accordance with sections 17a-75 to 17a-83, inclusive . . . ." Indeed, the cross-reference to General Statutes §§ 17a-75 through 17a-83, which govern the commitment of a mentally ill *child,* defined thereunder as "any person less than sixteen years of age"; General Statutes § 17a-75; further indicates that the legislature intended § 54-56d (m) to apply to juvenile delinquency proceedings because the age limitation set forth in those statutes is exactly the same as that contained in the General Statutes pertaining to the Superior Court for Juvenile Matters. See General Statutes §§ 46b-120 (1) and 46b-121 (a); see also footnotes 12 and 16 of this opinion.

This statutory language is not, however, clear and unambiguous when viewed in the complete context of

the "unambiguous statutory framework" providing that criminal and juvenile proceedings are governed by separate procedures, which "counsels against interpolating into our juvenile justice system a single statute from the laws governing adult criminal procedures." *In re Prudencio O.*, 229 Conn. 691, 698, 643 A.2d 265 (1994); see id., 699–701 (sixty day period for provision of probable cause hearing under General Statutes § 54-46a is not applicable to juvenile proceedings, and begins to run only when case is transferred to adult criminal docket); see also *State* v. *Ledbetter*, 263 Conn. 1, 13, 818 A.2d 1 (2003) ("it is axiomatic that delinquency proceedings in juvenile court are fundamentally different from criminal proceedings"); *Jennings* v. *Connecticut Light & Power Co.*, 140 Conn. 650, 665–66, 103 A.2d 535 (1954) (considering specific placement of statute in codification as indicative of legislative intent). Thus, given the respondent's explanation for the references in § 54-56d (m) to the department of children and families, we conclude that the statute is ambiguous, which permits us to consider extratextual sources in its construction.[17]

A review of the legislative history with respect to the amendment of § 54-56d, and specifically subsection (m), to include references to the department of children and families[18] eliminates any doubt that the legislature intended the statute to apply in juvenile delinquency

---

[17] The respondent contends that the references to the department of children and families in § 54-56d (m) apply to juveniles, some as young as fourteen years old, who have had their cases transferred to the adult criminal docket for prosecution pursuant to § 46b-127, or to "youths" whose cases are heard in that court as well. See footnotes 14 and 15 of this opinion. Given the separate statutory schemes governing criminal and juvenile matters proceedings, this argument is reasonable, but is answered by the compelling legislative history behind the amendment of § 54-56d (m).

[18] The amendments to § 54-56d initially referred to the department of children and youth services, which was succeeded by the department of children and families in 1993. See, e.g., *In re Eden F.*, 250 Conn. 674, 679 n.8, 741 A.2d 873 (1999); see also General Statutes § 17a-2 (b).

proceedings. First, we note that Public Acts 1983, No. 83-183, § 4, which amended § 54-56d (m) to involve the department of children and families in these proceedings, was entitled: "An Act Concerning Juvenile Competency to Stand Trial." This is significant, as "[t]he title of legislation when it is acted upon by the legislature is significant and often a valuable aid to construction . . . ." (Internal quotation marks omitted.) *Travelers Ins. Co.* v. *Pondi-Salik*, 262 Conn. 746, 755, 817 A.2d 663 (2003); id. (noting that General Statutes § 5-192p pertaining to state employees retirement system "has since been amended twice and the titles of the amending bills further reflect that the legislature considered this statute part of a retirement scheme"); see also *Small* v. *Going Forward, Inc.*, 281 Conn. 417, 425–26 n.5, 915 A.2d 298 (2007) (noting that title of public act may be considered, but that statute's "boldface catchline . . . is not an appropriate tool for the construction of a statute" because it is prepared by revisors of General Statutes for readers' convenience).

Second, the legislative history of Public Act 83-183 indicates that it was enacted to fill a procedural void that earlier revisions of § 54-56d had left with respect to juvenile matters proceedings. Attorney Patricia DeNuzze, a juvenile matters public defender, testified before the judiciary committee in support of the bill enacted as Public Act 83-183, and emphasized that the "purpose of this bill is to provide a procedure for *determining [the] competency of the juvenile* to stand trial and I want to just emphasize to provide a procedure. *There is no procedure now and, as a result, there's often a jurisdictional gap* and other abuses seem to flow from that, both the [c]ourt and the lawyers and the children in the [c]ourts are looking for some sort of guidance as to a standard to determine whether or not a child should be found competent or incompetent to stand trial and to *provide a . . . clear reliable mech-*

*anism to get that child some services."* (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1983 Sess., p. 408. Attorney DeNuzze's testimony is significant because "[i]t is now well settled that testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by the legislation."[19] (Internal quotation marks omitted.) *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 812, 942 A.2d 305 (2008). Thus, the legislative history demonstrates that the legislature intended for the amendments to § 54-56d, including subsection (m), to fill a statutory gap, namely, the lack of a procedure to address competency issues arising in juvenile matters court.

Finally, the application of § 54-56d (m) in juvenile matters proceedings is consistent with the public policy expressed by General Statutes § 46b-121h,[20] namely,

---

[19] The only other legislative history, namely, the remarks of Senator Howard Owens, Jr., introducing the bill on the Senate floor, is somewhat helpful, but does not state specifically the precise forum in which the statute would apply. See 26 S. Proc., Pt. 7, 1983 Sess., p. 2295, remarks of Senator Owens (stating that "bill provides a procedure for determining the competency of juveniles to stand trial; the placement, treatment and commitment of a *child* found to be [in]competent" [emphasis added]).

[20] General Statutes § 46b-121h provides: "It is the intent of the General Assembly that the juvenile justice system provide individualized supervision, care, accountability and treatment in a manner consistent with public safety to those juveniles who violate the law. The juvenile justice system shall also promote prevention efforts through the support of programs and services designed to meet the needs of juveniles charged with the commission of a delinquent act. The goals of the juvenile justice system shall be to:

"(1) Hold juveniles accountable for their unlawful behavior;

"(2) Provide secure and therapeutic confinement to those juveniles who present a danger to the community;

"(3) Adequately protect the community and juveniles;

"(4) Provide programs and services that are community-based and are provided in close proximity to the juvenile's community;

"(5) Retain and support juveniles within their homes whenever possible and appropriate;

"(6) Base probation treatment planning upon individual case management plans;

"that the juvenile justice system provide individualized supervision, care, *accountability and treatment in a manner consistent with public safety* to those juveniles who violate the law. The juvenile justice system shall also promote prevention efforts through the support of programs and services designed to meet the needs of juveniles charged with the commission of a delinquent act." (Emphasis added.) Indeed, the legislature has further emphasized that it is a goal of the juvenile justice system to "[p]rovide secure and therapeutic confinement to those juveniles who present a danger to the community"; General Statutes § 46b-121h (2); and to "[a]dequately protect the community and juveniles . . . ." General Statutes § 46b-121h (3). A conclusion that the assessment and commitment mechanisms of § 54-56d apply in juvenile matters proceedings certainly is consistent with the legislature's vision for a juvenile justice system that encompasses the continued monitoring and treatment of juveniles who appear to pose a risk to themselves or their communities, but are incompetent to stand trial.[21]

"(7) Include the juvenile's family in the case management plan;

"(8) Provide supervision and service coordination where appropriate and implement and monitor the case management plan in order to discourage reoffending;

"(9) Provide follow-up and nonresidential postrelease services to juveniles who are returned to their families or communities;

"(10) Promote the development and implementation of community-based programs including, but not limited to, mental health services, designed to prevent unlawful behavior and to effectively minimize the depth and duration of the juvenile's involvement in the juvenile justice system; and

"(11) Create and maintain programs for juvenile offenders that are gender specific in that they comprehensively address the unique needs of a targeted gender group."

[21] The respondent notes that, even if we hold § 54-56d inapplicable to juvenile matters proceedings, remedies do exist whereby the trial court may refer the case to the applicable Probate Court, or act pursuant to § 46b-121 to direct the department of children and families to investigate whether a petition alleging that a child is neglected, uncared for or has unmet special needs is warranted, as would seem to be the case for a child whose condition requires involuntary commitment. See General Statutes § 46b-120 (10) ("a child or youth may be found 'uncared for' who is homeless or whose home

Accordingly, we conclude that the relevant provisions of § 54-56d, and particularly subsection (m), govern competency questions arising in juvenile matters proceedings. We, therefore, agree with the state that the trial court improperly dismissed this case, rather than conducting a disposition hearing pursuant to § 54-56d (m).

The judgment is reversed and the case is remanded to the trial court for further proceedings according to law.

In this opinion the other justices concurred.

cannot provide the specialized care that the physical, emotional or mental condition of the child requires"). Indeed, the respondent notes that, in the present case, such proceedings presently are underway, as the trial court has appointed a guardian ad litem and neglect petitions were filed on the civil docket of the Superior Court for Juvenile Matters. Although the respondent's representations regarding the status of his civil proceedings are somewhat reassuring, we nevertheless conclude the goals of the juvenile justice system are best effectuated by our conclusion that the orderly procedure set forth in § 54-56d applies to juvenile matters delinquency cases that raise competency issues. This conclusion gives the court greater immediate control over the disposition of an incompetent, and potentially dangerous, juvenile; see General Statutes § 54-56d (m) (granting court authority to place juvenile in custody of commissioner of children and families, who "*shall* then apply for civil commitment" [emphasis added]); and also provides options for the court to order the supervision and continued treatment of a juvenile charged with a crime resulting in death or serious bodily injury who has been released. See footnote 1 of this opinion.