# STATE OF CONNECTICUT *v.* VINCENT M.[1]

Superior Court, Judicial District of Waterbury, Juvenile Matters
File No. 2491526

[1] In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the full names of the parties involved in this matter are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

Memorandum filed February 16, 2012

*Proceedings*

RUBINOW, J. This memorandum of decision addresses issues related to the competency evaluation of Vincent M. The state of Connecticut has filed an information alleging that Vincent engaged in delinquent acts when he was approximately ten years old. Through counsel, Vincent moved for, and the court granted, an evaluation of his competency to stand trial, pursuant to General Statutes (Rev. to 2009) § 54-56d.[2]

After a hearing held pursuant to § 54-56d (e), the court finds that the movant has failed to meet his burden

---

[2] As then effective, General Statutes (Rev. to 2009) § 54-56d provided in relevant part: "(a) . . . A defendant shall not be tried, convicted or sentenced while the defendant is not competent. For the purposes of this section, *a defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense.* (b) . . . *A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence* and the burden of going forward with the evidence *are on the party raising the issue.* The burden of going forward with the evidence shall be on the state if the court raises the issue. *The court may* call its own witnesses and *conduct its own inquiry.* (c) . . . *If,* at any time during a criminal proceeding, *it appears that the defendant is not competent,* counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency. (d) *If the court finds that the request for an examination is justified* and that, in accordance with procedures established by the judges of the Superior Court, there is probable cause to believe that the defendant has committed the crime for which the defendant is charged, *the court shall order an examination of the defendant as to his or her competency. . . .* (e) Hearing. The court shall hold a hearing as to the competency of the defendant no later than ten days after the court receives the written report" of the evaluation. (Emphasis added.)

of proving that he is not competent. See General Statutes § 54-56d (b). Accordingly, Vincent is presumed competent to stand trial on the pending delinquency charges. See General Statutes § 54-56d (a); see also *State* v. *Juan L.*, 291 Conn. 556, 969 A.2d 698 (2009).

## I

### PROCEDURAL HISTORY

Through its information filed August 11, 2010, the state alleges that on or about May 24, 2010, Vincent committed delinquent acts by way of sexual assault in the first degree, in violation of General Statutes § 53a-70, and sexual assault in the fourth degree, in violation of General Statutes § 53a-73a.

Vincent, who was born in March, 2000, first appeared before the juvenile court on August 18, 2010. On August 26, 2011, after the case had been pending for more than a year, Vincent's attorney moved for a competency evaluation. The court granted defense counsel's motion, and an examination was conducted as requested.[3] The competency hearing was conducted on November 3, 2011. Called by the moving party, Dr. Kathleen Rivera, the evaluator, was the sole witness; she was subject to direct examination and cross-examination, and the court inquired of this witness as authorized by § 54-56d (b).

## II

### APPLICABLE LEGAL PRINCIPLES

In *State* v. *Juan L.*, supra, 291 Conn. 556, our Supreme Court specifically considered "whether General Statutes § 54-56d (m), which governs the commitment or

---

[3] Neither the court file nor the transcript of the August 26, 2011 proceedings indicate either how Vincent appeared to be not competent, as contemplated by § 54-56d (c), or the basis upon which his examination was "justified" within the meaning of § 54-56d (d).

release of criminal defendants who are not competent to stand trial, applies in the Superior Court for Juvenile Matters." (Footnotes omitted.) Id., 557–59.[4] *Juan L.* concluded that § 54-56d (m) does apply in juvenile delinquency proceedings, and confirmed that the statute provides lawful options for disposition of children examined and found to be not competent and not restorable in delinquency cases. Id., 559, 569. In reaching this conclusion, the *Juan L.* court's examination of the legislative history and relevant amendments to § 54-56d in general, and § 54-56d (m) specifically, "eliminates any doubt that the legislature intended the [competency evaluation] statute to apply in juvenile delinquency proceedings." Id., 570–71. The Supreme Court thus held that "the relevant provisions of § 54-56d, and particularly subsection (m), govern competency questions arising in juvenile matters proceedings." Id., 574; see also *In re Jan Carlos D.*, 297 Conn. 16, 24 n.13, 997 A.2d 471 (2010) (use of § 54-56d competency protocol for children is "consistent with the goals of the juvenile system as set forth in General Statutes § 46b-121h"), citing *State* v. *Juan L.*, supra, 572–73.

Accordingly, given the application of § 54-56d (b) to the present delinquency matter, Vincent is presumed to be competent. *In re Jan Carlos D.*, supra, 297 Conn.

---

[4] General Statutes § 54-56d (m) (1) provides limited options for disposition of juveniles found to be incompetent and nonrestorable: "If at any time the court determines that there is not a substantial probability that the defendant will attain competency within the period of treatment allowed by this section, or if at the end of such period the court finds that the defendant is still not competent, *the court* shall consider any recommendation made by the examiners pursuant to subsection (d) of this section and any opinion submitted by the treatment facility pursuant to subparagraph (C) of subsection (j) of this section regarding eligibility for, and the appropriateness of, civil commitment to a hospital for psychiatric disabilities and *shall either release the defendant from custody or order the defendant placed in the custody of* the Commissioner of Mental Health and Addiction Services, *the Commissioner of Children and Families* or the Commissioner of Developmental Services . . . ." (Emphasis added.)

24 n.13; *State* v. *Juan L.*, supra, 291 Conn. 574. As the moving party, Vincent bears the burden of proving by a fair preponderance of the evidence that he is not competent because he is "unable to understand the [juvenile] proceedings against him . . . or to assist in his . . . own defense." General Statutes § 54-56d (a).

The court has assessed the issue of Vincent's competency to stand trial in juvenile court in the context of Connecticut's juvenile justice legislation as a whole.[5] This statutory scheme both acknowledges that young children may commit delinquent acts, and provides consequences for such misconduct. Our legislation establishes the jurisdiction of the Superior Court for Juvenile Matters over the prosecution, conviction and imposition of dispositional consequences upon children, even of tender years, whose conduct offends the law. See chapter 815t of the General Statutes. For instance, the Division of Criminal Justice is statutorily obligated to investigate and prosecute offenses committed by juveniles.[6] In addition, legislation requires the judicial

[5] In considering the impact of *State* v. *Juan L.*, supra, 291 Conn. 556, and § 54-56d upon the circumstances of this case, the court has acknowledged the axiom that " 'the legislature, in . . . enacting statutes, always [is] presumed to have created a harmonious and consistent body of law . . . .' " *State* v. *Ferdinand R.*, 132 Conn. App. 594, 600, 33 A.3d 793 (2011), quoting *State* v. *Courchesne*, 296 Conn. 622, 709, 998 A.2d 1 (2010).

[6] General Statutes § 51-276 provides in relevant part: "There is hereby established the *Division of Criminal Justice* within the Executive Department, which *shall be in charge of the investigation and prosecution of all criminal matters* in the Superior Court. . . ." (Emphasis added.) General Statutes § 51-277 establishes the powers and "duties" of the division, again emphasizing investigation and prosecution of criminal matters as follows: "(a) The division shall exercise all powers and *duties with respect to the investigation and prosecution of criminal matters* . . . . (b) The division shall take all steps necessary and proper *to prosecute all crimes and offenses against the laws* of the state and ordinances, regulations and bylaws of any town, city, borough . . . ." (Emphasis added.) General Statutes § 46b-121b (a) establishes that: "The *Division of Criminal Justice shall have charge of all proceedings concerning juvenile matters in the criminal session* of the Superior Court and all proceedings concerning families with service needs in the civil session of the Superior Court." (Emphasis added.)

branch, as further discussed herein, as well as the Department of Children and Families, to provide responsive services for juveniles who are found by the court to be delinquent.[7]

Connecticut law does not ascribe any minimum age that a child must have reached before he or she can be prosecuted and convicted for the commission of delinquent acts.[8] See General Statutes § 46b-120 (1), (2), (5) and (10), as amended. Effective as of January 1, 2010, and relevant to the date when he is alleged to have engaged in sexual assaults, Vincent was defined as a "child" within the scope of our delinquency statutes, given his date of birth: § 46b-120 then provided,

[7] For example, General Statutes § 17a-3 (a) establishes, in relevant part, [the Department of Children and Families'] obligation to: "plan, create, develop, operate or arrange for, administer and evaluate a comprehensive and integrated state-wide program of services, including preventive services, *for children and youths whose behavior does not conform to the law or to acceptable community standards* . . . . In furtherance of this purpose, the department shall: (1) Maintain the Connecticut Juvenile Training School and other appropriate facilities exclusively for delinquents; [and] (2) develop a comprehensive program for prevention of problems of children and youths and provide a flexible, innovative and effective program for the placement, care and treatment of children and youths committed by any court to the department . . . ." (Emphasis added.)

[8] Perhaps consonant with the lack of a minimum age at which a child can be charged with having committed delinquent acts, the commentators have noted that in Connecticut, "[t]here is no minimum age for competency of child witnesses." C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 6.9.1. General Statutes § 54-86h provides, in pertinent part, *"No witness shall be automatically adjudged incompetent to testify because of age .* . . . The weight to be given the evidence and the credibility of the [child] witness shall be for the determination of the trier of fact." (Emphasis added.) "To determine the competency of a child witness, the judge must consider the child's (1) maturity as it relates to ability to receive correct sensory impressions, (2) intellectual capacity for comprehending the facts sought to be developed, (3) ability to recollect and narrate intelligently, and (4) ability to appreciate the moral duty to tell the truth. . . . If the competency of a child to be a witness is challenged, the threshold question is whether the child is 'minimally credible.' . . . To decide that question, the court should use the four factors noted above. If the child passes the test of 'minimal credibility,' the weight to be given the testimony is a question for the trier of fact. . . ." (Citations omitted.) C. Tait & E. Prescott, supra, § 6.9.1.

in relevant part, that the term "(1) 'Child' means any person under sixteen years of age, except that *for purposes of delinquency matters and proceedings, 'child' means any person . . . under eighteen years of age . . . .*" (Emphasis added.) Section 46b-120 (10) established that " *'delinquent act'* means the violation of any federal or state law, or the violation of any order of the Superior Court, other than the commission of (A) an infraction or violation by a youth [a person sixteen or seventeen years of age] under subsection (b) of section 51-164n [enumerating violations], or (B) a motor vehicle violation by a youth for which a sentence to a term of imprisonment may be imposed . . . ." (Emphasis added.) Section 46b-120 (11) defined violation of § 53a-70 as a " 'serious juvenile offense.' " Without referencing any minimum age at which a child would be eligible for conviction as delinquent, § 46b-120 (5) provided that "*a child may be convicted as 'delinquent'* who has violated (A) any federal or state law, other than the commission of (i) an infraction or violation by a youth under subsection (b) of 51-164n, or (ii) a motor vehicle violation by a youth for which a sentence to a term of imprisonment may be imposed, (B) any order of the Superior Court, except as provided in 46b-148 [no detention permitted for child violating Family With Service Needs orders], or (C) conditions of probation as ordered for the court [for delinquency matters] . . . ." (Emphasis added.) General Statutes § 46b-140 (a) provided the protocol for the court's disposition of a delinquent child, without identifying any minimum age-eligibility for such consequences, as follows: "(a) In determining the appropriate disposition of a child convicted as delinquent, the court shall consider: (1) The seriousness of the offense, including the existence of any aggravating factors such as the use of a firearm in the commission of the offense and the impact of the

offense on any victim; (2) the child's records of delinquency; (3) the child's willingness to participate in available programs; (4) the existence of other mitigating factors; and (5) the culpability of the child in committing the offense including the level of the child's participation in the planning and carrying out of the offense."[9] Yet again, without specifying any minimum age, General Statutes § 46b-141 (a) established the court's jurisdiction to order commitments for children who have been convicted as delinquent, in relevant part, as follows: "[C]ommitment of children convicted as delinquent by the Superior Court to the Department of Children and Families shall be for (1) an indeterminate time up to a maximum of eighteen months, or (2) when so convicted for a serious juvenile offense, up to a maximum of four years at the discretion of the court, unless extended," as allowed by law.

Accordingly, as with any "child" as defined by § 46b-120 (1) (A), who, engages in conduct alleged to be sexual assaults, Vincent was eligible to be charged with delinquent acts as defined by § 46b-120 (10) or (11). The lack of any threshold age which a "child" must have reached before he or she can be charged with a "delinquent act" is fully consistent with the legislation creating and governing our juvenile justice scheme, which promotes the provision of clinical services and rehabilitation, not penalties, for juveniles upon conviction. See *In re Earl B.*, 121 Conn. App. 269, 288 n.5, 994 A.2d 713 (2010), quoting *In re Tyvonne M.*, 211 Conn. 151, 160, 558 A.2d 661 (1989).[10]

---

[9] Under the appropriate circumstances, a child's tender age when engaging in delinquent acts might well serve as one of the "mitigating factors" for the court's consideration in determining appropriate dispositional orders, as contemplated by § 46b-140 (a) (4).

[10] "Our Supreme Court has opined that the purpose of the comprehensive statutory treatment of juvenile delinquents is clinical and rehabilitative, rather than retributive or punitive and that [t]he objective of juvenile court proceedings is to determin[e] the needs of the child and of society rather than adjudicat[e] criminal conduct. . . . *In re Tyvonne M.*, [supra, 211 Conn.

A review of the applicable legislation places in context the limited role of the age of a child, such as Vincent, who is subject to delinquency charges.[11] The goals of our state's juvenile justice system are codified at § 46b-121h. See *In re Jan Carlos D.*, supra, 297 Conn. 24 n.13. Section 46b-121h explains that the juvenile justice system is designed to provide "individualized supervision, care, accountability and treatment in a manner consistent with public safety to those juveniles who violate the law" without designating any threshold age that a child must achieve before becoming eligible to be charged with committing delinquent acts, or before receiving care, accountability and treatment in response. For those whose conduct and needs are addressed by the juvenile justice system, the goals established by § 46b-121h are to: "(1) Hold juveniles accountable for their unlawful behavior; (2) Provide secure and therapeutic confinement to those juveniles who present a danger to the community; [and] (3) Adequately protect the community and juveniles . . . ." Similarly, no minimum age limit for participation in programs and services to be implemented within the juvenile justice system is established either by General Statutes § 46b-121i, which identifies the judicial branch's general obligation to provide such programs and services for delinquent children, or by General Statutes § 46b-121j, which designates specific programs and probation treatment for juvenile offenders.

---

160]." (Internal quotation marks omitted.) *In re Earl B.*, supra, 121 Conn. App. 288 n.5.

[11] As discussed in part IV, Vincent's age was a factor in the competency opinion delivered by Dr. Rivera. In considering the age at which a child can be the subject of a delinquency proceeding, the court has remained aware of the legislation authorizing transfer to the adult court of class C or D felony or unclassified felony charges brought against persons who were over the age of fourteen at the time of the offense. See General Statutes § 46b-127 (b), as examined in *State* v. *Fernandes*, 300 Conn. 104, 12 A.3d 925 (2011) (describing protocol for juvenile transfer hearing). Vincent is not the subject of such a transfer because he was ten years old when he is alleged to have engaged in sexual assaults.

While § 46b-120 (1), (5), (10) and (11) establish no age a child must reach before he or she can be charged with delinquent acts, the age of a child so charged is a significant feature of the nature and extent of responsive services available through the Court Support Services Division (CSSD).[12] General Statutes § 46b-121k calls for the development of age-appropriate programs to prevent and reduce children's delinquent conduct. Section 46b-121k (a) (2) explains, in pertinent part: "The programs shall be tailored to the type of the juvenile, including the juvenile's offense history, age, maturity and social development, gender, mental health . . . and shall be culturally appropriate, trauma-informed and provided in the least restrictive environment possible in a manner consistent with public safety. . . ." Relevant to Vincent's case, further fulfilling the legislative intention that such services be available to juveniles without designating a minimum age for eligibility, § 46b-121k (a) (2) also provides that "[t]he Court Support Services Division shall develop programs that provide . . . (F) sexual offender treatment . . . ."

## III

## DR. RIVERA'S EVALUATION

At the competency hearing, the court received evidence from a single witness, Dr. Kathleen Rivera, proffered by the defense. The court utilized the appropriate

---

[12] Although the juvenile justice statutes do not designate a particular age before which a child can participate in particular rehabilitative programs, other legislative provisions are directed at meeting the needs of other discrete classes of children. For instance, § 46b-121h (11) sets the goal to: "Create and maintain programs for juvenile offenders that are *gender specific* in that they comprehensively address the unique needs of a *targeted gender group*." (Emphasis added.) General Statutes § 46b-121k (d) requires that "[a]ny program developed by the Court Support Services Division that is designed to prevent or reduce delinquency and crime among juvenile offenders *shall be gender specific*, as necessary, and shall comprehensively address the unique needs of *a targeted gender group*." (Emphasis added.) General Statutes § 46b-121*l* (3) directs the funding of early intervention initiatives which will include "[s]ocial services and counseling *for female juvenile offenders* . . . ." (Emphasis added.)

standards in assessing the weight of this evidence. " 'It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . *It is the quintessential function of the fact finder to reject or accept certain evidence, and to believe or disbelieve any expert testimony. . . . The trier may accept or reject, in whole or in part, the testimony of an expert offered by one party or the other.'* . . . *In re Carissa K.*, 55 Conn. App. 768, 781–82, 740 A.2d 896 (1999)." (Emphasis added.) *In re Jason R.*, 129 Conn. App. 746, 772–73, 23 A.3d 18 (2011). " 'It is within the province of the trial court to find facts and draw proper inferences from the evidence presented.' . . . *McKenna* v. *Delente*, 123 Conn. App. 146, [166], 2 A.3d 38 (2010)." *McKeon* v. *Lennon*, 131 Conn. App. 585, 597, 27 A.3d 436, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011); see also *Adalberto S.*, 27 Conn. App. 49, 53, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992).

In determining the credibility and weight of evidence presented through Dr. Rivera, the court has kept in mind that "[n]o fact is . . . determined merely by the number of witnesses who testify for or against it; it is the quality and not the quantity of testimony that controls." Conn. Civil Jury Instructions 2.5-1, Credibility of Witnesses, available at http://www.jud.ct.gov/JI/civil/part2/2.5-1.htm. The court has considered the witness' "appearance on the stand and whether the witness has an interest of whatever sort in the outcome of the trial . . . [her] opportunity and ability to observe facts correctly and to remember them truly and accurately, and [has tested her evidence by its] own knowledge of

human nature and the motives that influence and control human actions." Id.[13] The court has considered the reasonableness of what the witness has said and the consistency or inconsistency of her testimony. Id.

In addition, the court acknowledges that expert witnesses, "because of their training, education, and experience, have knowledge beyond that of the ordinary person. Because of that expertise in whatever field they happen to be in, expert witnesses are allowed to give their opinions. . . . *However, the fact that these witnesses may qualify as experts does not mean that [the court must] accept their opinions.*" (Emphasis added.) Id., 2.5-3, Expert Witnesses. Thus, in deciding whether to believe some, or all, or none of Dr. Rivera's opinion testimony, the court has considered her education, training and experience in the field of assessing children's competency to stand trial; the facts she had, and the documents and other information that was available to her; the witness' opportunity and ability to examine that data; the witness' ability to recollect the activity and facts that form the basis for her opinion; and her ability to tell the court accurately about the facts, her actions in conducting her evaluation, and the basis for her opinion. Id.; see also *In re Jason R.*, supra, 129 Conn. App. 772–73.

Using the foregoing measures, the court finds that Dr. Rivera had acquired education, training and experience in the field of psychiatry before forming her opinion about Vincent's § 54-56d competency. Dr. Rivera had completed medical school in 2006; licensed as a

---

[13] "In considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *In re Carissa K.*, supra, 55 Conn. App. 783.

physician by the state of Connecticut, she completed her residency in adult psychiatry in 2009 and became board certified in adult psychiatry. Dr. Rivera had completed a fellowship in child and adolescent psychiatry in June of 2011; she was board eligible in this subspecialty when she examined Vincent, although she will not take the child and adolescent psychiatry board certification exam until the summer of 2012. Now pursing a fellowship in forensic psychiatry, Dr. Rivera has been employed by Yale's department of Law and Psychiatry, affiliated with the New Haven Office of Court Evaluations, since July 1, 2011. When she testified on November 3, 2011, Dr. Rivera had performed a total of fifteen competency evaluations, and had testified on ten to twelve occasions. Approximately four of those competency evaluations had been for minors; she had testified on at least one other occasion concerning a minor's competency. With these credentials, the Office of Court Evaluations had assigned Dr. Rivera to assess young Vincent's competency to stand trial. (Ex. A; Tr. 11/3/11.)

Dr. Rivera met with Vincent on two occasions, providing a total of approximately two and one-half hours of contact with him in September, 2011; she also reviewed a significant number of records reflecting the child's status both before and after the alleged sexual assaults.[14] Dr. Rivera spoke to a psychiatrist who had

---

[14] Those records included, but were not limited to reports of: the child's training in "Relationships and Emotional Competency at the Parent Child Resource Center (PCRC) in 2007 and 2008; pediatric emergency department and inpatient psychiatric treatment rendered at Yale-New Haven Hospital from March 14 through April 6, 2009; assessment and short-term residential treatment at The Children's Center of Hamden from April through July, 2009; a psychiatric consultation done at PCRC in January, 2010; the child's participation in psychiatric and therapeutic treatment delivered to him through the Clifford Beers clinic from June until his discharge on September 15, 2011, mere days before Dr. Rivera completed her evaluation. In addition, Dr. Rivera reviewed: records of Vincent's well child doctor's appointments from August, 2009, and September, 2010; his third and fourth grade CT Mastery Test results from March, 2009, and March, 2010, and his third marking period report card from fifth grade, dated 2011. (Ex. A.) Dr. Rivera's

treated Vincent, to Vincent's lawyer, and, on two occasions, to Vincent's mother. (Ex. A; Tr. 11/3/11.)

Upon completing her evaluation, Dr. Rivera opined that Vincent is not competent to stand trial. She expressly concluded that as of September, 2011, "Vincent [M.] did not demonstrate a rational understanding of the legal proceedings against him. He did not exhibit the ability to assist in his defense." (Ex. A.) Among other things, she further found that "Vincent did not demonstrate the ability to follow testimony for contradictions and errors, to bring relevant information to his attorney's attention, be cross-examined, understand instructions and advice, or make rational decisions about the handling of his case." (Ex. A.) Dr. Rivera maintained this opinion throughout the competency hearing. (Tr. 11/3/11.)

## IV

## VINCENT'S § 54-56d COMPETENCY

Given the effect of *State* v. *Juan L.*, supra, 291 Conn. 556, upon juvenile court matters and applying the legal standards for assessing the quality of the evidence as described above, the court finds that there is inadequate basis for accepting Dr. Rivera's opinion on the issue of Vincent's competency. As the court declines to credit the sole witness' conclusion that this child is not able to understand the delinquency proceedings against him or to assist in his own defense, Vincent cannot meet his burden of proving, by a preponderance of the evidence, that he is not competent within the meaning of § 54-56d (a). Section 54-56d (b)'s presumption of

opportunity and ability to examine those records is reflected throughout the summaries included in her report, prepared under date of September 27, 2011. (Ex. A.) Although not included in her written designation of materials that were reviewed prior to preparation of her report, it is apparent that Dr. Rivera also had access to the police report reflecting the circumstances giving rise to Vincent's juvenile delinquency charges. (Ex. A; Tr. 11/3/11.)

competency therefore prevails insofar as Vincent's pending delinquency charges are concerned. *State* v. *Juan L.*, supra, 556.

Dr. Rivera's opinion in this case lacks credibility for a number of reasons. In part, the court declines to credit her conclusion that Vincent is not competent because the opinion lacks an adequate foundation. Fundamentally, Dr. Rivera did not have sufficient experience or expertise upon which to rest her assessment of the 11.4 year old child's § 54-56d competency. As noted above, Dr. Rivera does have a high level of education, training and board certification in adult psychiatry; she had finished a fellowship in child and adolescent psychiatry just two months before examining Vincent, and is not yet board certified in the subspecialty dealing with children. Moreover, although she is presently a forensic fellow, Dr. Rivera has minimal experience conducting competency evaluations in general; she has scant experience in evaluating competency in juveniles. Even including Vincent, before rendering her opinion in this matter, Dr. Rivera had only done four competency evaluations for minors: one was age thirteen, and two were seventeen years of age.[15] Before this case, she had never evaluated a child of Vincent's age or stage of development, or any child under the age of thirteen, for § 54-56d purposes. (Tr. 11/3/11.)

In the absence of specific experience or sufficient training in assessing competency for children of Vincent's age and stage of development, even though counsel may have agreed that she is an expert, the court finds that Dr. Rivera is not an authority on the issue of competency issues as to pre-teenagers in general or as

---

[15] When asked about the ages of the four minors whom she had evaluated for competency purposes, Dr. Rivera's response was only partly clear. She stated: "Vincent was definitely the only one under the age of thirteen. The other three were adolescents; one was 13, one was 17, and the other two were 17." (Tr. 11/3/11.)

to children such as Vincent who are age 11.4 at the time of assessment. (Tr. 11/3/11.) Thus, her competency opinion lacked an adequate foundation. In reaching this conclusion, the court credits the witness' admission that she had never written nor published any articles in professional literature dealing with the subject of competency evaluations for minors. She had never lectured her peers, taught a seminar, or served as a member of a panel dealing with this subject; her methods for assessing child competency or her opinions on the same have never been cited by others as having professional validity outside the courtroom setting.[16] As Dr. Rivera lacks expertise upon which to support her opinion concerning young Vincent's competency, her opinion does not bear weight sufficient to enable the movant to prevail.

Other aspects of the evidence support the court's determination that Dr. Rivera's opinion lacks an adequate foundation. Dr. Rivera candidly admitted that her method of forensic evaluation, while appropriate for adults, has not been validated for use in assessing competency for children of Vincent's age. She acknowledged that there is no professional literature to support the conclusion that the questions she presented to Vincent, in the course of attempting to "provide an insight as to how a person thinks," are reliable tools for use when performing a competency examination on a child of his age and stage of development. (Tr. 11/3/11.) While the witness' testimony emphasized what she perceived to be Vincent's apparent lack of capacity to engage in abstract reasoning, and while she used this ostensible deficit as part of her basis for determining that the child was not competent to stand trial on the pending juvenile delinquency charges, Dr. Rivera was not aware of any case law that would make abstraction a requirement for

---

[16] Dr. Rivera has participated in Juvenile Justice Intermediate Evaluations. (Tr. 11/3/11.)

competency under § 54-56d. The methods of evaluation she employed in reaching her conclusions regarding Vincent's competency further lead the court to find that Dr. Rivera's opinion was based upon an insufficient foundation.[17]

Similarly, the lack of foundation for Dr. Rivera's competency opinion is evident through its inconsistency with Vincent's acknowledged ability to explain what a plea bargain is; on cross-examination by the state, Dr. Rivera credibly conceded that the child gave a reasonable response to her inquiries on this procedural aspect of delinquency proceedings. (Tr. 11/3/11.) The reasonableness of Vincent's response on this subject is supported by Dr. Rivera's own conclusion that the child's mental status exam indicates that, upon evaluation, his "performance and presentation were consistent with his current age and developmental stage." (Ex. A.) Vincent's understanding of the plea bargaining process, within the limits of § 54-56d as applicable to this case pursuant to *State* v. *Juan L.*, supra, 291 Conn. 556, is further consistent with Dr. Rivera's concession that Vincent's responses to many of the questions she posed to him during the evaluation process were expected, rather than unexpected, for children of his age. (Tr. 11/3/11.) Dr. Rivera's report is replete with examples of Vincent's age-appropriate answers to specific questions, consistent with her credible conclusion that his "*thought process was relevant, logical and coherent,* although concrete," during the competency examination. (Emphasis added.) (Ex. A.) Moreover, Dr. Rivera's

[17] The court's determination that Dr. Rivera's opinion lacks adequate foundation is also supported by a review of the nature of the information made available to her. The evaluator's written report and testimony reflect her consultation with the child, his mother, the child's prior psychiatrist, and the child's lawyer; there is no indication, however, that she had collateral contact with the state's attorney or with a victim's representative. (Ex. A.) The court has factored the witness' database when considering the process Dr. Rivera utilized in forming her opinion.

conclusions about Vincent's understanding of the plea bargaining process, and her assessment of the quality of his personal thought process, are inconsistent with her opinion that this child lacks the degree of reasoning that is necessary to understand the ongoing juvenile delinquency proceedings, or to assist with his defense. (Ex. A; Tr. 11/3/11.) This inconsistency leads the court to again find that there is insufficient foundation for Dr. Rivera's opinion that Vincent is not competent.

In deciding that there is insufficient basis upon which to accept Dr. Rivera's opinion, the court has credited the fact that even though the child had received a relatively significant amount of mental health care both before and following the sexual assaults that led to his pending delinquency charges, the witness did not identify any treated or untreated psychiatric issues as the cause for concluding that Vincent lacks competency to stand trial.[18] (Ex. A; Tr. 11/3/11.) The court further credits Dr. Rivera's findings that Vincent conducts himself at an age-appropriate level at school, socially and in sports activities. This evidence is consistent with the evaluator's conclusion that "Vincent's *intelligence and general fund of knowledge* were assessed as being in the *average to above average range of intellectual functioning.*" (Emphasis added.) (Ex. A.) Together, these conclusions are sufficient to establish that notwithstanding his psychiatric status, Vincent has demonstrated the ability to learn and to follow rules, to follow them, to acquire new information and to make reasonable judgments in educational and social environments. As further discussed below, Dr. Rivera's credible acknowledgment of Vincent's age-appropriate cognitive assets and educational accomplishments, his normal social functioning outside the home, and the lack of any measurable impact from his psychiatric status have the effect of further diminishing any value of her conclusion

---

[18] See footnote 14.

that this child lacks competency, given § 54-56d's application to children. *State* v. *Juan L.*, supra, 291 Conn. 574.

The court is further unable to attribute sufficient weight to Dr. Rivera's competency opinion because her conclusions were apparently based, in part, upon an overly circumscribed perception of the practical, functional and legal role the child's mother would likely play in the course of the pretrial or intra-trial decision-making process.[19] Dr. Rivera noted, among other things, that Vincent "consistently identified his mother as the person to ask questions of even if they were legal in nature . . . ." (Ex. A.) Incorporating this observation into her opinion that he was not competent, Dr. Rivera concluded that Vincent could not stand trial, in part, because he "did not demonstrate understanding of the autonomy he has over the decisions involving his case . . . ." (Ex. A; see also Tr. 11/3/11.) Notwithstanding the child's confidential relationship with his attorney, the subject of any "autonomy" attached to a child involved in a delinquency proceeding, and his attendant due process rights, must be assessed in the light of his or her parent's requisite, legal role in those proceedings. Accordingly, in rejecting the adequacy of this ground for Dr. Rivera's opinion that Vincent is not competent, the court observes that a number of our statutes expressly require a child's parent or guardian to play a fundamental role when a juvenile is charged with violating the law; the parent or guardian is *not a bystander* to the legal proceedings related to such charges, but is, in prominent circumstances, a critical participant whose physical presence is mandated by law. See, e.g., General Statutes §§ 54-199 and 46b-137;[20]

---

[19] In reaching this determination, the court credits Dr. Rivera's findings that Vincent has no legal father, so that his mother is his only acting parent. (Ex. A.)

[20] Under our juvenile justice system, a parent or guardian is expected to be an intrinsic part of the child's interaction with law enforcement agents, or presentation to the court after a service of a warrant or juvenile summons,

see also *In re Kevin K.*, 299 Conn. 107, 123–24, 7 A.3d 898 (2010) (because officers had properly provided a prearrest advisement to the child in the presence of his parent two days earlier, they were not required to readvise child and parent before renewed questioning about same event). Dr. Rivera's conclusion that Vincent is not competent to stand trial, in part, because he did not demonstrate the "autonomy" she feels to be inherent in the § 54-56d competency at issue in these delinquency proceedings, thus lacks weight because of its inconsistency with a child's parent's or guardian's crucial role throughout the course of delinquency proceedings.

Viewed in the context of the necessary involvement of a parent in a child's delinquency prosecution and subsequent court proceedings, Vincent's behavior in looking to his mother for guidance and support when confronted with questions related to the legal process is consistent with the law of this state, and also with the "best practices" which engage a child's parent or

as well as when tendering a plea. For instance, General Statutes § 46b-137 explicates the fundamental role a parent or guardian plays in the extension of due process rights to children. That statute provides, in pertinent part that: "(a) Any admission, confession or statement, written or oral, made by a child under the age of sixteen to a police officer or Juvenile Court official shall be inadmissible in any proceeding concerning the alleged delinquency of the child making such admission, confession or statement *unless made by such child in the presence of the child's parent or parents or guardian and after the parent or parents or guardian and child have been advised* (1) of the child's right to retain counsel, or if unable to afford counsel, to have counsel appointed on the child's behalf, (2) of the child's right to refuse to make any statements, and (3) that any statements the child makes may be introduced into evidence against the child." (Emphasis added.) General Statutes § 46b-137; see also *In re Kevin K.*, 299 Conn. 107, 123–24, 7 A.3d 898 (2010). General Statutes § 54-199 provides that "[w]henever any minor charged with the commission of an offense is to appear in any court, *he shall be accompanied by one of his parents . . . or by his legally appointed guardian . . . .* The judge of such court may, in his discretion and for good cause, waive the requirement . . . ." (Emphasis added.)

guardian in the court process.[21] See General Statutes
§ 54-199. Under these circumstances, the court declines
to accept Dr. Rivera's opinion that this aspect of Vin-
cent's conduct, looking to his mother for guidance and
support, provides adequate grounds for finding that the
child is not competent within the meaning of § 54-
56d (a).

The court also declines to credit Dr. Rivera's opinion
that Vincent cannot stand trial because her conclusions
with regard to the child's likely courtroom behavior
were overtly inconsistent with the demeanor he exhib-
ited during the competency hearing. After interviewing
Vincent, Dr. Rivera concluded, among other things, that
Vincent "demonstrated that he would have difficulty
changing his behavior to adapt to what is needed in a
court room. For instance continuing to raise his hand
in court the way he is accustomed to doing in school."
(Ex. A.) Dr. Rivera further based her opinion, in part,
on her determination that Vincent "is not able to sepa-
rate the social expectations of other settings such as
school and home from the expectations of the court-
room." (Ex. A.) The court was able to observe young

[21] The necessary role of a parent or guardian in delinquency matters is
fully consistent with the "best practices" followed by our juvenile courts
when deciding whether to accept or reject a juvenile's admission and atten-
dant disposition. This "best practices" approach does not anticipate that
the child, standing all alone, will decide about the progress or outcome of
his or her pending delinquency charges. Rather, the "best practices" protocol
assumes that the child *and* his or her parent or guardian, as well as the child's
lawyer, will all play a role in determining whether to enter an admission and
thus forgo a trial, or whether to proceed to trial. The "best practices"
approach accordingly anticipates that the court will include the child and
his or her parent or guardian in the plea canvass. In such circumstances,
the court may directly ask the child's parent or guardian such questions as
whether the parent or guardian has understood the inquiries presented to
the child during the canvass; whether the parent or guardian understood
the child's answers; whether the parent or guardian agreed with the child's
decision to admit the delinquent act at issue; whether the parent or guardian
agreed with the proposed disposition; and whether the parent or guardian
found the outcome to serve the child's best interests, under all the circum-
stances then prevailing.

Vincent's demeanor and comportment during the hearing, which involved approximately an hour and one-half of questioning of and testimony from Dr. Rivera, followed by counsels' argument. For the great majority of that period, the child appeared focused and attentive, quietly seated near his lawyer and his mother. Near the very end of the hearing, Vincent did appear to be more restless than he had been earlier, consistent with the behavior any eleven year old child might demonstrate after sitting so long in a formal courtroom environment. However, the child did not engage in behaviors such as raising his hand to be heard, standing up or attempting to leave the courtroom; rather than being disruptive, under the circumstances, Vincent's conduct in the courtroom was very good, nearly a paradigm for any child in his position. Even Dr. Rivera conceded, on cross-examination by the state, that she did not observe Vincent fidgeting or engaging in distracting behaviors during the hearing; she admitted that the child appeared to be calm. (Tr. 11/3/11.) That Vincent's conduct in an adversarial environment was so markedly different from that predicted by the witness again leads the court to discredit Dr. Rivera's opinion on the issue of competency.

The court further declines to credit Dr. Rivera's opinion that Vincent is not statutorily competent to stand trial on his delinquency charges because this position is so inconsistent with her credible reports of the child's many age-appropriate social and academic accomplishments. As previously noted, the court credits the portions of Dr. Rivera's testimony and report that, implicitly, make it clear that Vincent has, in fact, the ability to use the degree of reasoning that is common to children of his age who are successful in school and sport-related activities, despite his history of witnessing traumatic events, and notwithstanding the aggressive and hostile behaviors that have historically led to his

hospitalizations.[22] (Ex. A; Tr. 11/3/11.) Vincent is reported to be doing very well in regular classes at school; he is an honor student; he has demonstrated sufficient educational and social proficiency so that his elementary school considered having him skip the third grade. Vincent's CT Mastery Test results show him to be operating at grade level, measured against other elementary school students in Connecticut. (Ex. A.; Tr. 11/3/11.) With these credible findings, the court accepts Dr. Rivera's conclusion that Vincent is functioning well at age eleven; she has credibly admitted that "[a]lthough Vincent has required intensive psychiatric treatment from a very young age, he has been successful overall in other social settings such as school and organized sports." (Ex. A.) In concluding that Dr. Rivera's opinion as to Vincent's competency lacks merit, the court considers that opinion to be too inconsistent with the logical inference that success in such settings as "school and organized sports" requires a child to acquire and comprehend new information about rules and norms for reasoning, behavior and performance, and to follow and apply those rules and norms even in stressful, competitive settings such as the classroom and the playing fields.

Notwithstanding her findings concerning Vincent's overall success in regular classes at school, socially, and in sports activities, Dr. Rivera bases her competency

---

[22] Dr. Rivera reports that "Vincent has a history of witnessing domestic violence and of sexual abuse." (Ex. A.) She also noted the child's nocturnal enuresis, described difficulties with self-control in the classroom, and history of having fallen out of his mother's arms as an infant. (Ex. A.) She credibly reported that Vincent has been diagnosed with Mood Disorder Not Otherwise Specified and Adjustment Disorder, Mixed Disturbed Conduct, for which a variety of medications have been prescribed in addition to other mental health therapies; the regimen of psychotropic medications Vincent is now taking includes mood stabilizers and antipsychotic medications. (Ex. A; Tr. 11/3/11.) The positive impact of those medications is evident in Dr. Rivera's credible conclusion that "Vincent is an overall healthy boy." (Ex. A; Tr. 11/3/11.)

opinion, in part, upon limitations she has identified in Vincent's ability to engage in higher levels of abstract thinking. She remarks that he was unable to state the elements of the offense of sexual assault in the first degree; to "identify incongruences in the facts of the police reports"; or to perform a series of particular mathematical calculations. (Ex. A.) Yet despite her reports of these ostensible restrictions in his ability to perform certain tasks during her testing, as previously noted, Dr. Rivera has reported, and the court has credited, the conclusion that insofar as the results of her "Mental Status Exam" were concerned, "Vincent's performance and presentation were consistent with his current age and developmental stage." (Ex. A.) This aspect of Dr. Rivera's opinion is consistent with her findings concerning Vincent's overall success in regular classes at school, socially, and in sports activities, and with her previously addressed conclusions regarding his "relevant, logical and coherent, although concrete," thought process. (Ex. A.)

However, despite having found that Vincent has an age-appropriate level of academic and social performance and presentation, Dr. Rivera is of the opinion that he is not competent to face his juvenile delinquency charges because he lacks the *"capacity to rationally understand* the legal proceedings against him or assist in his own defense." (Emphasis added.) (Ex. A.) The court credits Dr. Rivera's testimony indicating that despite the child's recorded psychiatric diagnosis and the mental health treatment records she had reviewed in preparation of her report, she saw no evidence of any previously diagnosed symptomatology in the course of her forensic interviews. (Ex. A; Tr. 11/3/11.) This credible aspect of the witness' opinion supports the inference that Vincent has not been rendered not competent by any feature of his psychiatric status.

Yet, in the context of opining on the subject of § 54-56d *competency*, Dr. Rivera concluded that "[i]mprovement of [Vincent's] *capacity* to understand his current charges and assist in his defense *requires a process of cognitive and social maturation that typically cannot be accelerated by educational or psychological programs*." (Emphasis added.) (Ex. A.) Dr. Rivera admitted upon cross-examination by the state: "usually the type of rational understanding that is required to understanding legal proceedings of this matter usually is acquired between the ages of 14 and 16; although there are some studies that say around 12 some kids can be able [to] understand rationally, sort of, these proceedings."[23] (Tr. 11/3/11.) The court declines to credit this aspect of Dr. Rivera's opinion that Vincent is not competent to stand trial, as it is too intrinsically bound to his chronological age and attendant, normal stage of intellectual and social development. To adopt this aspect of the basis for her opinion that Vincent is not competent to stand trial, the court would have to impose a higher threshold for the element of § 54-56d (a) competency than that which is lawfully associated with children who are being assessed for the purposes described in *State* v.

---

[23] Dr. Rivera's age-related bias in competency matters was evident in her agreement, upon cross-examination by the state, that most ten or eleven year olds would have difficulty understanding the legal term allegation, a term the evaluator used in the process of interviewing Vincent. (Tr. 11/3/11.) Her bias is further illustrated by her response to the court's inquiry as to how, despite her conclusion that Vincent is not competent to stand trial, he was able to provide well-reasoned answers to many of the questions posed during the forensic interviews. Dr. Rivera explained that this was not due to the child's random choice of appropriate answers: "I attribute it moreso with the fact that our children and adolescents tend to make decisions based on the immediacy of the outcomes without necessarily taking into consideration what future outcomes or consequences might come with it. . . . [I]n children and adolescents in general, when given, let's say, you can go home but you'll have five years probation versus doing one month and having one year they might choose going home now just because they want to go home now without necessarily thinking that five years probation is a fairly long time of probation." (Tr. 11/3/11.)

*Juan L.*, supra, 291 Conn. 556. Using this aspect of Dr. Rivera's analysis, Vincent could not meet the criteria for competency because, under her analysis, he is too young, and too immature to stand trial in a juvenile court, even though his functioning was unaffected during her testing by his mental health issues, he does well in school, he participates in organized sports, his thought process is relevant and logical, and he generally functions as a well, eleven year old male.

In declining to credit Dr. Rivera's opinion that Vincent cannot be found competent to stand trial until he reaches a more mature stage of cognitive and social development, a feature of his chronological age, the court observes that such a standard is fundamentally inconsistent with the laws which govern our juvenile justice system. As discussed above, Connecticut's statutes allow prosecution of even young children, contemplate holding them responsible for delinquent conduct, and, through CSSD's services, enable them to access age-appropriate clinical and rehabilitative programs. See, e.g., General Statutes §§ 46b-121h, 46b-121i and 46b-121j.

In identifying the witness' demonstrated bias on the subject of competency in children, the court notes that Connecticut has not adopted an age-based standard for determining competency to stand trial, as contemplated by § 54-56d (a) or (b). Moreover, as previously discussed, in enabling the provision of age-appropriate rehabilitation services through the CSSD, the legislation establishing Connecticut's juvenile justice system clearly anticipates that some children against whom delinquency charges are brought will be older, and that some will be younger. This feature of our juvenile justice statutes is in accord with the fact that Connecticut does not automatically reject the validity of testimony provided by children who have not reached a certain

level of chronological age or maturity, although a child witness may be the subject of a modified version of the adult oath, or may deliver testimony without the imposition of any oath at all in certain circumstances. See, e.g., Practice Book § 32a-4 (a); C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 6.9.1.[24]

Given the holding of *State* v. *Juan L.*, supra, 291 Conn. 556, notwithstanding the age of the child against whom delinquency charges are brought, § 54-56d's presumption of competency remains effective unless the child has been proved to be not competent by a preponderance of the evidence. General Statutes § 54-56d (a) and (b). In this context, considering the evidence in its entirety, the court is constrained to conclude that Dr. Rivera is biased in favor of a standard that would find that only minors older than Vincent are vested with the presumption of competency to stand trial that is intrinsic to § 54-56d (b); Vincent's relative infancy carried significant weight in her determination that he could not understand the proceedings against him, and that he could not assist his attorney in his defense.[25] Dr. Rivera retained this opinion even though she credibly reported that Vincent's "long-term memory appeared intact as evidenced by his ability to recall important personal information that most people would normally recall" and although his "intelligence and general fund of knowledge were assessed as being in the average

---

[24] As the commentators have observed, "Reported cases bear out the maxim that every child has differing abilities to comprehend and narrate facts." C. Tait & E. Prescott, supra, § 6.9.1, citing, in part, "*State* v. *Dollinger*, 20 Conn. App. 530, 533, 568 A.2d 1058 (1990) (2 1/2-year-old child [witness] incompetent); *State* v. *Brigandi*, 186 Conn. 521, 535 n.16, 442 A.2d 927 (1982) (10-year-old [witness] held competent)."

[25] Dr. Rivera admitted that the work of Dr. [Thomas] Grisso was a prominent element in her analysis. (Tr. 11/3/11.) Dr. Grisso places the age at which "kids might obtain abstract reasoning [to be] within the ages 13 to 16. He also talks about that . . . at the age of 14, that's when . . . most adolescents are able to think in the same way as an adult would. He doesn't specifically say anything about 11 year olds; he talks in broader terms." (Tr. 11/3/11.)

to above average range of intellectual functioning" as measured against others of his age. (Ex. A; Tr. 11/3/11.) Dr. Rivera's conclusion that the child is not competent to stand trial is consistent with her own age-bias for juvenile competency matters, but is inconsistent with her salient findings concerning Vincent's memory, intelligence, relevant, logical and coherent thought process, educational and social success, as described above, and with the implications of *State* v. *Juan L.*, supra, 291 Conn. 556, for application of § 54-56d (a) and (b) in juvenile delinquency matters.[26] Accordingly, the age-biased element of Dr. Rivera's evidence again causes the witness' competency opinion to carry little weight.

## V

## CONCLUSION

For the foregoing reasons, the court declines to credit Dr. Rivera's opinion that Vincent is not competent to

---

[26] In reaching this conclusion, the court acknowledges the implications of the reasoning and the opinion in *In re Manuel R.*, 207 Conn. 725, 543 A.2d 719 (1988). Fairly read, that opinion specifically dealt not with the question of whether the respondent, Manuel, was *competent* to stand trial, but whether he had the *capacity* to waive the right to counsel who could assist him with pending violation of juvenile probation charges. Id., 732–33. In *In re Manuel R.*, our Supreme Court "reject[ed] the respondent's invitation to impose a per se rule of incompetency on all children" for whom the issue of waiver of counsel arises in juvenile delinquency cases. Id., 736. That conclusion was, however, based on the court's express assessment in 1988 of the *capacity*, not § 54-56d competency, of children so involved: "We are not persuaded . . . that a per se rule based on the age of the child is an appropriate response to the admittedly delicate issue of juveniles' waiver of rights. The empirical evidence to date suggests that age, by itself, is not a reliable touchstone for determining a juvenile's *capacity* to exercise fundamental rights. A major study concluded that 'age itself is quite limited in its effectiveness as a guide for weighing decisions about juveniles' understanding.' T. Grisso, [Juveniles' Waiver of Rights: Legal and Psychological Competence (1981)], p. 90. It is true that, for all children below the age of fourteen, the available evidence suggests that comprehension of legal rights is elusive. Id., p. 202. With regard to children between the ages of fourteen and sixteen, however, general intelligence level, as well as socioeconomic status and prior court experience, become increasingly significant factors in a child's ability to grasp and exercise legal rights. Id., p. 90. The empirical

stand trial on his pending delinquency charges. The witness' insufficient experience and foundation, the multiple inconsistencies in the evidence, and the age-bias element of the opinion tendered to the court, individually, in partial combination, or taken collectively, render the movant's evidence inadequate to overcome the presumption of competency established by § 54-56d (b).

As Vincent has failed to meet his burden of proving that he is not competent by a preponderance of the evidence, he is presumed to be competent to stand trial on his juvenile delinquency charges, pursuant to § 54-56d (b). General Statutes § 54-56d (a); *State* v. *Juan L.*, supra, 291 Conn. 574.

literature therefore fails definitively to identify age as a surrogate for *incapacity* for children below the age of sixteen. For a similar conclusion, see R. Lawrence, ['The Role of Legal Counsel in Juveniles' Understanding of Their Rights,' 34 Juv. & Fam. Ct. J., No. 4, 49, 53 (1984)]." (Emphasis added.) *In re Manuel R.*, supra, 734.